No. 88-493

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

VICKI PETERSON,

        Plaintiff and Appellant,

-vs-

GREAT FALLS SCHOOL DISTRICT NO. 1 and A,
CASCADE COUNTY, MONTANA,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Cameron Ferguson; Hartelius, Ferguson & Baker,
        Great Falls, Montana

    For Respondent:

        J. David Slovak; Ugrin, Alexander, Zadick & Slovak,
        Great Falls, Montana

---

Submitted on Briefs:  Feb. 9, 1989

Decided:  May 12, 1989

Filed:

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Vicki Peterson appeals the July 20, 1988 order of the Eighth Judicial District, Cascade County, granting the defendant-respondent's motion for summary judgment. The District Court found Peterson's cause of action against the school district is barred by § 2-9-111, MCA, and recent decisions interpreting that statute. We affirm the order of the District Court.

Peterson was terminated from her employment as a custodian with the Great Falls School District Number 1 and A (District) in May of 1984. According to the complaint, the basis for the termination was Peterson's alleged refusal, for safety reasons, to empty 55 gallon trash drums into a dumpster. Prior to her termination, Peterson alleges she attempted to have the District change her duties so she would not be required to lift and empty these containers. The answer indicates the District declined to change her duties, allegedly directing her to obtain assistance in emptying the containers. When Peterson later refused to empty the 55 gallon drums, her employment was terminated. The termination was carried out by an administrative assistant employed by the District. Peterson then brought this action for wrongful discharge alleging the District's requirement that she empty the 55 gallon containers created an unsafe work place and violated a Great Falls city ordinance prohibiting the use of 55 gallon drums for garbage purposes. In an amended answer, the District raised legislative immunity as an affirmative defense, citing § 2-9-111, MCA. Section 2-9-111, MCA, provides:

> Immunity from suit for legislative acts and omission. (1) As used in this section:

(a) the term "governmental entity" includes the state, counties, municipalities, and school districts;

(b) the term "legislative body" includes the legislature vested with legislative power by Article V of the Constitution of the State of Montana and any local governmental entity given legislative powers by statute, including school boards.

(2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.

(3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

(4) The immunity provided for in this section does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation.

The District then moved for summary judgment based upon legislative immunity. The District Court granted the motion for summary judgment. On appeal of that order the appellant presents the following two issues:

1. Does § 2-9-111, MCA, provide Great Falls School District Number 1 and A immunity for the act of its administrative assistant in terminating Vicki Peterson?

2. Does § 2-9-111, MCA, violate Vicki Peterson's right to full legal redress guaranteed by Article II, sec. 16, of the Montana Constitution?

In her first issue, Peterson contends that the act of terminating her was an administrative action, not a

3

legislative action and therefore the immunity granted in § 2-9-111, MCA, is not applicable to this case. However, we find the question of what immunity is provided may be answered by simply examining the plain meaning of the words used in § 2-9-111, MCA. W. D. Construction, Inc. v. Board of County Commissioners of Gallatin County (1985), 218 Mont. 348, 707 P.2d 1111. While the title of the statute infers that the immunity granted is for legislative acts or omissions, the actual language employed in defining and granting the immunity is much broader. Subsection (2) (the primary enabling subsection) grants immunity to a governmental entity for an act or omission of its legislative body. Further, this immunity applies to the acts or omissions of members, officers, or agents of those legislative bodies. Section 2-9-111(2), MCA. Subsection (1)(a) expressly includes school districts in the definition of governmental entities, and subsection (1)(b) includes school boards under the term legislative body. Subsection (3) provides that such immunity to the aforementioned members, officers, or agents of a legislative body is for their "lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body." (Emphasis added.) Section 2-9-111(3), MCA. The only specific limitation on this governmental immunity is found in subsection (4) which provides that this immunity "does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation." Section 2-9-111(4), MCA.

Based upon the plain language of the statute and case law interpreting the statute, the court found that the action of the legislative body need not be legislative in nature to afford immunity. Citing W. D. Construction v. Board of County Commissioners of Gallatin County, supra; Barnes v.

4

Koepke (Mont. 1987), 736 P.2d 132, 44 St.Rep. 810; and Bieber v. Broadwater County (Mont. 1988), 759 P.2d 145, 45 St.Rep. 1218. Recently in the Bieber case we upheld the granting of summary judgment in a wrongful discharge case involving § 2-9-111, MCA. There a county commissioner terminated a county road worker for damaging county equipment. The other county commissioners later ratified this termination. On appeal, we held that § 2-9-111, MCA, provides immunity to the county commissioners and the individual commissioner who lawfully discharges an official duty of that legislative body.

Comparing the Bieber case with the facts in this case, we find the only differences are that the governmental entity in this case is a school board, rather than the county commissioners, and that the party performing the act is an agent/employee of the legislative body, rather than a member. The statute clearly extends immunity coverage to school districts, to the school boards governing those school districts and to agents of those school boards. Further, school districts have the authority and duty to hire, retain or dismiss custodians pursuant to § 20-3-324(2), MCA. The administrative assistant, as an agent of and on behalf of the school board, legitimately exercised this authority when he discharged Peterson. The discharge was ratified by the school board at its next regularly scheduled meeting. Where an agent performs an act which is later ratified by their principal, that act is considered an action of the principal. Restatement of Agency 2d, § 218.

The District Court properly interpreted § 2-9-111, MCA, as providing immunity from suit for the Great Falls School District 1 and A, for the action of its agent in executing an official duty of the School District in discharging Peterson. Since there were no material issues of fact and the defendant

5

was immune from suit for the alleged cause of action as a matter of law, the court correctly granted the defendant's motion for summary judgment. Evans v. Montana National Guard (Mont. 1986), 726 P.2d 1160, 1161, 43 St.Rep. 1930, 1932.

Peterson also argues that the granting of immunity under § 2-9-111, MCA, violates her fundamental right to full legal redress contained in Article II, sec. 16, of the 1972 Montana Constitution. She contends the State must show a compelling state interest in order to restrict, limit or modify her right to full legal redress. Pfost v. State (Mont. 1985), 713 P.2d 495, 42 St.Rep. 1957. (The Pfost case dealt with limitations upon the State's liability for personal injury actions imposed by § 2-9-107, MCA.)

This Court, however, has found the right involved in this type of action is that of access to the courts under Article II, sec. 16, of the 1972 Montana Constitution. In the Bieber case, in construing § 2-9-111, MCA, we found Article II, sec. 16, of the 1972 Montana Constitution guarantees access to the courts, but that that access to the courts is not a fundamental right. Bieber, 759 P.2d at 148, citing Linder v. Smith (Mont. 1981), 629 P.2d 1187, 1190, 38 St.Rep. 912, 915. As a fundamental right is not involved, the constitutionality of the statute is presumed and the State need only show a rational relationship to a legitimate State interest. Small v. McRae (1982), 200 Mont. 497, 524, 651 P.2d 982, 996, citing New Orleans v. Dukes (1976), 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511.

This Court has identified that rational relationship to a legitimate State interest which justifies § 2-9-111, MCA, as follows:

> The oft articulated rationale for retaining government immunity (specifically in this case legislative immunity) is to insulate a decision or

> law making body from suit in order to prevent its decision or law making processes from being hampered or influenced by frivolous lawsuits.

Bieber, 759 P.2d at 148. The statute has previously passed this rational relationship test and we find Peterson's argument of unconstitutionality must fail.

The District Court's order granting summary judgment based upon § 2-9-111, MCA, is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:


The decision of the majority in this case has carried immunity of the school district beyond the orbit of legislative action and into the sphere of administrative immunity. That decision is an incorrect reading of the statute.

As the majority opinion pointed out, the title of act which became § 2-9-111, MCA, is "immunity from suit for legislative acts and omissions." While the title is no part of the act, and we have in other cases held that the entitlement of an act does not control the meaning of the act itself, there is at least an indication here that the intent of the legislature was to grant immunity for <u>legislative action</u> by a legislative body, and no more.

That this was the intent of the legislature can be gleaned from a parsing of the difference between subsection (2) and subsection (3) of the act. They follow:

> (2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.

> (3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action <u>by</u> <u>the</u> <u>legislative</u> <u>body</u>. (Emphasis supplied.)

By ordinary rules of English, it will be seen that subsection (2) grants complete immunity to the governmental <u>entity</u> for acts or omissions of its legislative body. Subsection (3) limits immunity to persons for the "lawful discharge of official duty associated with the introduction or consideration of legislation or action <u>by the legislative</u>

- 8 -

body." The entity has complete immunity. The persons have immunity only for actions by the legislative body.

One of the great positions taken by the Constitutional Convention in 1971 was to eliminate state immunity from suit. The purpose evinced by the constitutional framers was to place governmental entities and their agents on the same footing as agents of private entities, including municipal corporations, where tortious acts were concerned. The legislature, through various acts, and goaded by fearful bureaucrats, has nibbled away at the idea of state immunity, and § 2-9-111, MCA, passed in 1977 is an example. There is no doubt that the Act is poorly phrased and nebulous in meaning, but the whole tenor of the act indicates the intention of the legislation to confine the withdrawal of immunity only to legislative acts performed by governmental units. Under the Court's interpretation of § 2-9-111, MCA, as now espoused by the majority, no governmental unit except the state itself will have any liability for the tortious acts of its agents, because all actions or omissions can be construed to be those of agents either of the school board, the city council, or the county commissioners. Thus administrators, foremen, and janitors are covered under legislative immunity. That I submit is a bad result, and is a bad interpretation of § 2-9-111, MCA.

The purpose of a grant of legislative immunity is to allow a legislative body to exercise its legislative duties without hampering its discretion. A body acts legislatively when it sets policy, or adopts regulations for the enforcement of its policies. Beyond that, the entity or its agents are acting administratively and should not come within the ambit of legislative immunity. Our cases construing § 2-9-111, MCA, leading up to this decision gave no hint that this Court would interpret § 2-9-111, MCA, as a complete

grant of immunity to every substate governmental entity, employee and agent.

In W. D. Construction v. Board of County Commissioners Gallatin County (1985), 707 P.2d 111, the county commissioners were acting quasi-legislatively in applying zoning regulations. This Court properly allowed immunity under § 2-9-111, MCA. In Barnes v. Koepke (1987), 736 P.2d 132, this Court held that the decision of the county commissioners not to renew a lease of a hospital and nursing home was a legislative action and so within the legislative immunity. In Bieber v. Broadwater County (Mont. 1988), 759 P.2d 145, the Court, in upholding immunity for a county commissioner who fired an employee for abusing county equipment, this Court said:

> It is clear that the Broadwater County Commissioners are a legislative body of the governmental entity of Broadwater County under the language of the statute. The decision to fire Bieber, although initially made by only one Commissioner, Duede, was later ratified by the rest of the Commission. It was an act of a member of a legislative body and is covered by the express language of the statutes . . ."

The decision in this case takes the grant of immunity far beyond the members of the Commission themselves, and grants immunity both to the entity and to the employee or agent where no legislative act is involved. Thus are the citizens of our State unprotected from the insolence of office.

Because I would hold that legislative immunity does not apply in this case, there would be no need as far as I am concerned to discuss the effect of Article II, Section 16 of the Montana Constitution on § 2-9-111, MCA. When Bieber was decided, I was not a member of the panel to which the case had been assigned. Unfortunately that decision was made

without oral argument by less than a full Court. Ordinarily this Court does not decide constitutional questions unless the full Court is represented. I have a profound disagreement with the majority members of this Court that Article II, Section 16 does not provide as a fundamental right both a ready access to the courts and a full legal remedy. I will wait for another case to discuss this issue. It is enough to say here that in my view § 2-9-111, MCA, carried to the extent decided by the majority in this case, violates Article II, Section 16 in every particular.

I would reverse the District Court.

_John C. Sheehy_
_____
Justice

Mr. Justice William E. Hunt, Sr., dissenting:


I dissent. The case of Bieber v. Broadwater County (Mont. 1988), 759 P.2d 145, 45 St.Rep. 1218, simply stands for the proposition that, when a county commissioner or other legislative body appoints one of its members to fill a vacant managerial position, the appointed commissioner acts under the delegated authority of the legislative body. The commissioner's actions while performing the official duties of the managerial position may be ratified by the commission, thus entitling the commissioner to governmental immunity. Bieber does not grant this same immunity to a member of the government who is not also engaged in legislative functions. The case does not stand for the proposition that governmental immunity in the State of Montana has been stricken.

William E. Hunt Sr.
Justice