No. 89-497

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

ROBERT W. KOCH, JEROME PRONOVOST,
MABEL LOGAN,

        Plaintiffs and Appellants,

   -v-

YELLOWSTONE COUNTY, METRAPARK and
METRAPARK BOARD,

        Defendants and Respondents.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Jay F. Lansing, Billings, Montana (Koch)
           Gary L. Beiswanger, Billings, Montana (Pronovost)
           Terry L. Seiffert, Billings, Montana (Logan)

       For Respondent:

           Doris M. Poppler, Billings, Montana
           Anne Sheehy, David W. Hoefer, Deputy County
           Attorneys, Billings, Montana

Submitted: May 23, 1990

Decided: July 12, 1990

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an order of the Thirteenth Judicial District, Yellowstone County granting summary judgment to the defendants Yellowstone County, Metrapark, and Metrapark Board, in a cause of action arising from the alleged wrongful termination by the defendants of the plaintiff/employees. Summary judgment was granted on the grounds that the defendants are immune from suit pursuant to § 2-9-111, MCA. We reverse and remand.

Appellants Koch, Logan, and Pronovost, plaintiffs below, raise the following issues on appeal:

(1) Did the District Court err in determining that Yellowstone County and MetraPark Board are immune from suit pursuant to § 2-9-111, MCA, and therefore were entitled to summary judgment in their favor?

(2) Did the District Court err in determining that no genuine issue of material fact existed thereby rendering the case appropriate for disposition upon the defendants' motion for summary judgment?

(3) Did the decision of the District Court granting summary judgment to Yellowstone County and MetraPark Board depriv appellants of a constitutional right to equal protection of the law?

In January of 1980 the Yellowstone County Commissioners created by resolution a joint commission known as the "Yellowstone Exhibition-METRA Commission", later known as the MetraPark Board. "MetraPark" is the name of the physical complex consisting of the

2

Yellowstone Exhibition (fairgrounds) and the Metra Arena building (civic center), all of which is managed and governed by the MetraPark Board.

On May 21, 1987 the MetraPark Board adopted a recommendation of its executive committee to reorganize its employee structure. The reorganization plan called for the elimination of eight employment positions and the creation of five allegedly new employment positions. On May 22, 1987, the MetraPark Board sent letters to the eight existing employees terminating their positions effective June 30, 1988. The positions held by plaintiffs Koch, Logan, and Pronovost---maintenance manager, switchboard operator, and assistant/operations manager, respectively---were among those eliminated.

On May 28, 1987, the MetraPark Board personnel committee proposed to the County Commissioners the creation of the five new positions and the County Commissioners approved the recommendation within a few days. On June 13, 1987, the commissioners approved the eight previous employees' termination and the hiring of the five new employees. Pronovost was given the opportunity to apply for the new position of "Operations Director" but was not hired. Subsequently, all eight terminated employees filed suit; three of these suits were consolidated into the case at bar.

The District Court denied Yellowstone County's initial motion for summary judgment based on the immunity provided by § 2-9-111, MCA. This Court then handed down its decision in Peterson v. Great Falls School District No. 1 and A (Mont. 1989), 773 P.2d 316, 46

3

St.Rep. 880. Yellowstone County renewed its prior motion which the court granted based on the immunity provided in § 2-9-111, MCA and Peterson.

## I.

The plaintiffs contend that § 2-9-111 should be interpreted as granting immunity to a legislative body only for legislative acts. We disagree. It is well settled in the line of cases decided under the statute that the language of the statute does not distinguish between legislative and administrative acts:

> Our recent decisions in Bieber [(Mont.1988), 759 P.2d 145, 45 St.Rep. 1218] and Peterson [(Mont.1989), 773 P.2d 316, 46 St.Rep. 880] clearly disposed of this issue. While the statute is entitled "Immunity from suit for legislative acts and omissions," we held in Peterson and Bieber that the plain meaning of the statute's actual language is much broader in that "action by the legislative body need not be legislative in nature to afford immunity." Peterson, 773 P.2d at 318. Accordingly, we decline to give credence to the plaintiff's distinction between administrative and legislative acts "because the plain language of the statute makes no such distinction." Bieber, 759 P.2d at 147. We will not delve outside the plain meaning of the words used in a statute. W.D. Construction, 707 P.2d at 1113, Barnes v. Koepke (Mont.1987), 226 Mont. 470, 736 P.2d 132, 134.

State ex rel. Eccleston v. Third Judicial District Court (Mont. 1989), 783 P.2d 363, 367, 46 St.Rep. 1929, 1934. Accordingly, in determining whether immunity is afforded to the defendants in this case, we look to the plain meaning of the language of the immunity statute, § 2-9-111, MCA. The statute provides:

> 2-9-111. **Immunity from suit for legislative acts and omissions.** (1) As used in this section:
>     (a) the term "governmental entity" includes the state, counties, municipalities, and school districts;
>     (b) the term "legislative body" includes the legislature . . . and any local governmental entity given

4

legislative powers by statute, including school boards.

(2) A governmental entity is immune from, suit for an act or omission of its legislative body or a member, officer, or agent thereof.

(3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

(4) the immunity provided for in this section does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation.

We now examine the nature of the entities named as defendants in this case---Yellowstone County, MetraPark, and MetraPark Board---to determine if and to whom statutory immunity applies. Yellowstone County is clearly a governmental entity under subsection (1). According to the plain meaning of subsection (2), the County is immune from suit if the MetraPark Board is a legislative body of the County or an agent thereof.

Subsection (1)(b) of § 2-9-111, MCA defines "legislative body" as "the legislature . . . and any local governmental entity given legislative powers by statute, including school boards. Legislative power includes the power to make, alter, or repeal laws or rules for the future, 16 C.J.S. Constitutional Law § 113, pp. 377-378; Springer v. Philippine Islands, (1927), 277 U.S. 189, 201-202, 72 L.Ed. 845, 849, 48 S.Ct. 480, 482; as well as the power to control fiscal matters, such as budgets, appropriations and levy of taxes.

The statutory powers of the separate fair commission and the civic center or building commission constituting the MetraPark Board are found in chapter 8 and 21 of title 7, Montana Code Annotated. Section 7-8-2103, MCA, authorizes the County

5

Commissioners to create a county building commission for

> . . . the management of such civic center, youth center, park buildings, museums, county parks, recreation centers, hospitals, or any combination of two or more thereof. Such commission shall be composed of the chairman of the board of county commissioners and five lay members to be appointed by the board. In cases where a commission has been appointed, the commission, together with the board, shall have the power to employ a manager.

Section 7-8-2103, MCA. Sections 7-21-3401 et seq., MCA, authorizes the County Commissioners to create county fair commissions and sets forth the terms of office of such commissioners, § 7-21-3402; the necessary qualifications, § 7-21-3403; the organization of the commission, § 7-21-3404; and the compensation of the commissioners, § 7-21-3405. The county fair commission also has specific statutory powers:

> **7-21-3406. Powers of county fair commission.** By resolution of the board of county commissioners, the county fair commissioners shall have control and operation of the fair and the supervision and management of the fairgrounds . . .

The fair commission also has specific duties:

> **7-21-3407. Duties of county fair commission.** (1) The commission shall do all things necessary to hold a successful annual county agricultural fair . . . including:
> (a) employment of labor;
> . . .
> (e) everything necessary in conducting the continuing operation of the county fairgrounds and buildings.
> (2) The commission shall have charge of all fairgrounds and fair property.

These duties and powers are by their nature executive or administrative. The MetraPark Board is a joint commission created by resolution of the County Commissioners combining the powers of

6

the civic center and fair boards. With regard to the powers of the Metra Park Board, plaintiffs cite a September 4, 1987 Attorney General's Opinion as authority that the Yellowstone County Commissioners had no authority to create a joint commission comprised of the fair board and the civic center board that empowers these individual boards to vote on matters pertaining to the statutory authority vested in the other. See §§ 7-8-2103 and 7-21-3401, MCA, supra. Although we find it unnecessary to specifically address this issue to dispose of this case, it is worth noting that the 1989 Legislature, apparently in response to an Attorney General's opinion, enacted legislation authorizing a county board of commissioners to create a joint fair and civic center commission, as already existed for ten years in Yellowstone County:

> **7-21-3451. Authorization to create a joint fair and civic center commission.** (1) the board of county commissioners shall have the power to create a joint fair and civic center commission for the management and operation of the fairgrounds and civic centers within the county.
> (2) The board of county commissioners of a county upon application from the regularly appointed county fair commission and county building commission, may by resolution create a joint fair and civic center commission.
> (3) The joint fair and civic center commission is vested with the full powers granted to the county fair commission and the county building commission.

See, generally, §§ 7-21-3451 through -3458. The duties of the joint commission are also the same as the combined duties of the county fair commission and the county building commission. Section 7-21-3454.

It is evident from these statutes that the statutory powers

7

of the MetraPark Board are limited to the management and operation of the Metra Civic Center and do not include any authority to make, alter, or repeal laws or rules. Clearly the MetraPark Board is not vested with the legislative power of a school board as in Peterson and Eccleston nor does it have the legislative power of a board of county commissioners as in Bieber and Miller v. Fallon County (Mont. 1989), 783 P.2d 419, 46 St.Rep. 2087. The MetraPark Board clearly performs statutory executive functions and is not a legislative body.

The second part of our analysis under subsection (2) of § 2-9-111, MCA, is to determine whether MetraPark Board is an agent of the Board of County Commissioners of Yellowstone County, the per se legislative body of Yellowstone County. While the District Court relied on Peterson in granting summary judgment to the defendants, our recent decision in Eccleston more clearly addresses the relationship between agency and the immunity of § 2-9-111, MCA. In Eccleston we held that a school principal and janitors were agents of the school board within the meaning of § 2-9-111, MCA, providing them immunity from suit for an alleged negligent failure to remove ice and snow from steps at the school gymnasium. In Eccleston, we relied on the Restatement 2d of Agency. Under the Restatement, the crucial factor in this agency determination is control by the principal:

§ 1. Agency; Principal; Agent.
(1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control. . . . (Emphasis added.)

8

Restatement 2d of Agency, § 1. In _Eccleston_ we recognized that the school boards are expressly given the right to control principals and janitors, including the right to employ and dismiss them as deemed necessary, by statute. _See_ § 20-3-324, MCA.

In this regard, the case at bar differs from _Eccleston_. While the Board of County Commissioners has the authority to supervise all county officers in the performance of their duties, _relative to assessing, collecting, safekeeping, management or disbursement of the public revenues_, the Board does not have the power to perform county officers' statutory duties for them or direct the manner in which duties are performed. Section 7-4-2110, MCA, Arnold v. Custer County (1928), 83 Mont. 130, 146-47, 269 P. 396, 401; Hicks v. Orange County Board of Supervisors (1977), 138 Cal.Rptr. 101, 109, 69 Cal.App.3d 228, 242; People v. Langdon (1976), 126 Cal.Rptr. 575, 578, 54 Cal.App.3d 384, 390; _see generally_ 20 C.J.S. _Counties_, § 85, p.854. Here, there is no specific statutory grant of power to the Board of County Commissioners giving it the right to control the civic center board, the fair board, or the MetraPark Board relative to the employment function. With respect to the employment of personnel, the MetraPark Board has independently derived statutory powers granted by the legislature and thus is not subject to the control of the Board of County Commissioners regarding the exercise of that function under these facts. Therefore, under the Restatement the MetraPark Board is not the agent of the County Commissioners with respect to the employment of plaintiffs here. Accordingly, the

MetraPark Board is not immune from suit under § 2-9-111(2), MCA, as an agent of a legislative body.  We are not however, detracting from the powers of the Board of County Commissioners to fix the number of employees, the salaries and benefits, or adopt personnel policies, when such is a facet of its statutory authority to adopt a county budget and levy taxes to finance the same.

Furthermore, although it is not an agent of the County Commissioners, the Board and the members of the Board are nevertheless officers of Yellowstone County, just as the County Superintendent of Schools, the County Clerk and Recorder, and other statutorily created executive officers are, and the County is subject to indemnify such officers for their torts while acting as a Board under § 2-9-305, MCA.

The MetraPark Board is neither a legislative body or an agent thereof, therefore it is not immune from suit under § 2-9-111, MCA. Having concluded that immunity does not extend to the MetraPark Board, we need not address the other issues raised on this appeal as the lower court did not rule upon them.

**REVERSED AND REMANDED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

District Judge Larry W. Moran specially concurring:

Mr. Justice McDonough's Opinion is an exhaustive and entirely appropriate analysis of the facts and law in the case, and I concur in the result. Even so, the style, content, and length of the Opinion is representative of difficulties encountered in a departure from traditional common law procedure.

Historical development of the common law has proceeded from court recognition of facts and theory, to enunciation of legal principles, thence to establishment of precedent. This progression has been the strength and flexibility of judge made law, and the primary reason for its effectiveness and durability. However, this sequence is not apparent in recent decisions regarding the issue of governmental immunity and the effect of § 2-9-111, MCA. In fact, the exact reverse has occurred. Instead of moving forward to the establishment of precedent, the movement has been to a self-perpetuating case by case pattern of decision.

It is respectfully suggested that a case by case determination of the complex and important issue of governmental immunity and applicability of § 2-9-111, MCA, tends to create confusion and instability. Many fine and intricate distinctions (such as those reflected in Justice McDonough's Opinion) will, inevitably, become finer, more intricate, and more complex as the struggle to maintain logic intensifies; there will be distinctions within distinctions, and the reasons for decisions

11

will become, essentially, inscrutable; and, precedent will become more elusive.

In the evolution of tort liability, primary emphasis has been directed to the act or conduct producing a cause of action. It is proper in a democracy where the law must be on guard when extending special rights, privileges, or immunities, that liability be based on acts or conduct, not on the nature or character of the actor. Unfortunately, in fixing liability in cases involving governmental immunity and § 2-9-111, MCA, attention has been misdirected to a matter deserving only passing interest -- the nature or character of the actor -- with act and conduct generally ignored. This, too, seems to be a departure from the tested and proven way of the common law.

How beneficial it would be to see (or to write) an opinion on governmental immunity considering provisions of § 2-9-111, MCA, simply concluding: "the act giving rise to the cause of action is clearly administrative or executive, not legislative. Hence, governmental immunity does not attach" -- or the reverse, in applicable situations.

_____
Hon. Larry W. Moran
District Judge, sitting for
the Hon. Justice John C.
Sheehy

12

We concur in the foregoing specially concurring opinion of District Judge Moran.

_____
Justice

_____
Hon. Thomas A. Olson
District Judge sitting for
the Hon. Justice Diane G. Barz

13